## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| **IN RE:**<br>**Michael Paul Whitfield**<br><br>**Debtor(s)** | **Case No. 23-15939-MER**<br><br>**Chapter 7** |

### ALLY BANK'S NOTICE OF MOTION FOR RELIEF FROM STAY AND OPPORTUNITY FOR HEARING PURSUANT TO 11 U.S.C. § 362(D)

### OBJECTION DEADLINE: April 24, 2024

YOU ARE HEREBY NOTIFIED that Ally Bank("Movant") has filed a Motion for Relief from Stay, a copy of which is attached hereto.

A hearing on the motion has been set for <u>May 01, 2024, at 9:30 A.M.</u> at the U.S. Bankruptcy Court, U.S. Custom House, 721 19th Street, Courtroom (C), Fifth Floor, Denver, Colorado 80202. The hearing will be conducted in accordance with the provisions of L.B.R. 4001-1. All parties with telephonic hearings must call 1-833-568-8864. The Meeting ID is 161 090 8955.

IF YOU DESIRE TO OPPOSE THIS MOTION, you must file with this court a WRITTEN OBJECTION to the motion on or before the objection deadline stated above and serve a copy upon movant's attorney, whose address is listed below.Your objection must state clearly all objections and any legal basis for the objections. The Court will not consider general objections.

If you file an objection, you are REQUIRED to comply with L.B.R. 4001-1 regarding hearing procedures, including (1) the timely submission and exchange of witness lists and exhibits and (2) attendance at the above-scheduled hearing in person or through counsel, if represented.

IF YOU FAIL TO FILE AN OBJECTION, the scheduled hearing will be **vacated**, and an order granting the relief requested may be granted without further notice to you.

Dated: April 11, 2024

Respectfully submitted:

Spencer Fane LLP

<u>/s/ P. Matthew Cox</u>
**P. Matthew Cox**
(9879)
10 Exchange Place, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 521-9000
Fax: (801) 363-0400
mcox@spencerfane.com

Attorney for Movant Ally Bank

## <u>CERTIFICATE OF SERVICE</u>

  I certify that on April 11, 2024, I caused to be served a true and correct copy of the foregoing Notice of Motion, Motion for Relief with attached exhibits and Proposed Order by electronic mail or by first class mail with postage prepaid on the following:

*Via US Mail*

Michael Paul Whitfield
9124 Madeleine St
Denver, CO 80260

Paige Nguyen
9275 Utica ST
Westminster, CO 80031

*Via CM / ECF / NEF*
Jeanne Y. Jagow
P.O. Box 271088
Littleton, CO 80127
trustee@jagowlaw.us

U.S. TRUSTEE
Byron G. Rogers Federal Building,
1961 Stout St. Ste. 12-200
Denver, CO 80294
USTPRegion19.DV.ECF@usdoj.gov

       */s/ Cathy Bush*
       4515 N. Santa Fe Ave.
       Oklahoma City OK 73118

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

### The Honorable Michael E. Romero

| | |
|---|---|
| **IN RE:** | **Case No. 23-15939-MER** |
| **Michael Paul Whitfield** | |
| **Debtor(s)** | **Chapter 7** |
| | **A Contested Matter** |
| **Ally Bank** | |
| **Movant** | |
| **Michael Paul Whitfield** **Debtor(s)** | |
| **Jeanne Y. Jagow** **Chapter 7 Trustee** | |
| **Respondent(s)** | |

## ALLY BANK'S MOTION FOR RELIEF FROM STAY AND OPPORTUNITY FOR A HEARING CONCERNING A 2016 JEEP RENEGADE UTILITY 4D TRAILHAWK 4WD 2.4L I4 PURSUANT TO § 362(D)

Ally Bank ("Movant") files this Motion for Relief from Stay against Michael Paul Whitfield ("Debtor"), in the above-captioned bankruptcy proceeding and pursuant to Rules 4001 and 9014 and Local Rule 4001-1, and hereby moves this Court to grant Ally Bank relief from the automatic stay provisions of 11 U.S.C. § 362.

1.     This United States Bankruptcy Court for the District of Colorado has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 362. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (G), and (O).

2.     On December 21, 2023, Debtor filed a voluntary bankruptcy petition under Chapter 7 of Title 11 of the United States Code.

3.     Movant holds a security interest in the vehicle of Debtor identified as a 2016 Jeep Renegade Utility 4D Trailhawk 4WD 2.4L I4, VIN: ZACCJBCT9GPD30350 (the "Collateral"). Copies of the Motor Vehicle Retail Installment Sales Contract (the "Contract") and Evidence of Title are attached as Exhibits "A" and "B," respectively.

4.     The estimated replacement value a retail merchant would charge for the Collateral is $11,975.00. A copy of the vehicle valuation is attached as Exhibit "C."

1

5.    As of filing of the motion, Debtor owes a contract balance to Movant of $17,437.80.

6.    The monthly payments are $365.21, due on the 9th day of each month.

7.    Debtor is under direct payment defaults to Movant pursuant to the Retail Installment Sales Contract.

8.    Debtor defaulted in the contractual amount of $1,476.63. The last payment was received on October 27, 2023. A copy of the payment history is attached as Exhibit "D."

9.    Cause to lift the stay also exists under 11 U.S.C. § 362(d)(1) because Debtor has failed to make monthly payments to Movant and the Collateral continues to decline in value.

10.    Further cause exists to lift the stay pursuant to 11 U.S.C. § 362(d)(2) because Debtor has no equity in the Collateral and the Collateral is not necessary for an effective reorganization.

11.    Continuation of the automatic stay pursuant to 11 U.S.C. § 362(a) will work real and irreparable harm to Movant and may deprive Movant of the adequate protection to which it is entitled under 11 U.S.C. §§ 361, 362.

12.    Movant asks the Court to waive the 14-day stay under Rule 4001(a)(3) for any order granting relief from the automatic stay there is no equity in the Collateral and because the value of Collateral continues to depreciate.

**WHEREFORE**, Movant asks the Court to enter an order granting relief from the automatic stay imposed pursuant to 11 U.S.C. § 362 and waiving the 14-day stay of such order under Rule 4001(a)(3). If the Court fails to terminate the automatic stay, Movant asks the Court to enter an order adequately protecting Movant's interest in the Collateral. Movant also asks that any order granted under this motion shall remain in effect should this case be converted to another bankruptcy chapter.

2

Movant asks for such other and further relief to which it is justly entitled.

Respectfully submitted:

Spencer Fane LLP

*/s/ P. Matthew Cox*
**P. Matthew Cox**
(9879)
10 Exchange Place, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 521-9000
Fax: (801) 363-0400
mcox@spencerfane.com

Attorney for Movant Ally Bank

3

**LAW 553-CO-e 9/20**

## RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| MICHAEL WHITFIELD 9124 MADELEINE ST FEDERAL HEIGHTS, CO 80260 ADAMS | PAIGE NGUYEN 9275 UTICA ST Westminster, CO 80031 ADAMS | ECHOPARK 500 E 104th Ave Thornton, CO 80233 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| Used | 2016 | Jeep Renegade | ZACCJBCT9GPD30350 | Personal, family, or household unless otherwise indicated below ☐ business        N/A ☐ agricultural   ☐ _____ |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $4,000.00 is |
|---|---|---|---|---|
| 13.74 % | $ 8,550.86 | $ 17,744.26 | $ 26,295.12 | $ 30,295.12 |

(e) means an estimate

**Returned Check Charge:** If the Amount Financed is $75,000 or less, you agree to pay a charge of $ 25.00 if any check you give us is dishonored or any electronic payment is returned unpaid. If the Amount Financed is more than $75,000 or the vehicle is purchased primarily for business or agricultural use, you agree to pay a charge of $ 20.00 if any check you give us is dishonored or any electronic payment is returned unpaid.

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 365.21 | Monthly   beginning 04/09/2023 |
| N/A | $ N/A | N/A |
| N/A | | |

**Late charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of $15.00.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**SELLER'S RIGHT TO CANCEL - If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on page 4 of this contract, which gives the Seller the right to cancel within _____N/A_____ days, will apply.**

X A                              N/A
**Buyer Signs**

X A                              N/A
**Co-Buyer Signs**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**If this transaction contains a fee or premium for guaranteed automobile protection, all holders and assignees of this consumer credit contract are subject to all claims and defenses which the Buyer could assert against the original creditor resulting from the Buyer's purchase of guaranteed automobile protection.**

Non-Authoritative Copy  Ally Bank - 02/25/2023

Exhibit A

- 02/25/2023

**ITEMIZATION OF AMOUNT FINANCED**

1 Cash Price (including $ _____ N/A _____ delivery and handling charge‡
   and $ _____ 1,461.06 _____ sales tax)                                   $ _____ 18,450.06 _____ (1)

2 Total Downpayment =
   Trade-In  _____ N/A _____   _____ N/A _____   _____ N/A _____
            (Year)        (Make)           (Model)

   Gross Trade-In Allowance                                                $ _____ N/A _____
   Less Pay Off Made By Seller to _____ N/A _____                          $ _____ N/A _____
   Equals Net Trade In                                                     $ _____ N/A _____
   + Cash                                                                  $ _____ 4,000.00 _____
   + Other _____ N/A _____                                                 $ _____ N/A _____
   + Other _____ N/A _____                                                 $ _____ N/A _____
   + Other _____ N/A _____                                                 $ _____ N/A _____
   (If total downpayment is negative, enter "0" and see 4I below)          $ _____ 4,000.00 _____ (2)

3 Unpaid Balance of Cash Price (1 minus 2)                                 $ _____ 14,450.06 _____ (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):

   A Cost of Optional Credit Insurance Paid to Insurance Company or Companies.
     Life                                   $ _____ N/A _____
     Disability                             $ _____ N/A _____                $ _____ N/A _____
   B Vendor's Single Interest Insurance Paid to Insurance Company           $ _____ N/A _____
   C Other Optional Insurance Paid to Insurance Company or Companies        $ _____ N/A _____
   D Optional GAP Agreement                                                 $ _____ 354.00 _____
   E Official Fees Paid to Government Agencies
     to _____ N/A _____           for _____ N/A _____                        $ _____ N/A _____
     to _____ N/A _____           for _____ N/A _____                        $ _____ N/A _____
     to _____ N/A _____           for _____ N/A _____                        $ _____ N/A _____
   F Government Taxes Not Included in Cash Price
     _____ N/A _____                                                        $ _____ N/A _____
   G Government License and/or Registration Fees
     _____ N/A _____
     Registration Fee : $ 52.20                                            $ _____ 52.20 _____
   H Government Certificate of Title Fees                                  $ _____ N/A _____
   I Other Charges (Seller must identify who is paid and describe purpose)
     to _____ N/A _____           for Prior Credit or Lease Balance        $ _____ N/A _____
     to _____ JM&A VSC _____      for _____ Service Contract _____          $ _____ 2,888.00 _____
     to _____ N/A _____           for _____ N/A _____                        $ _____ N/A _____
     to _____ N/A _____           for _____ N/A _____                        $ _____ N/A _____
     to _____ N/A _____           for _____ N/A _____                        $ _____ N/A _____
     to _____ N/A _____           for _____ N/A _____                        $ _____ N/A _____
     to _____ N/A _____           for _____ N/A _____                        $ _____ N/A _____
     to _____ N/A _____           for _____ N/A _____                        $ _____ N/A _____
     to _____ N/A _____           for _____ N/A _____                        $ _____ N/A _____
     to _____ N/A _____           for _____ N/A _____                        $ _____ N/A _____
     Total Other Charges and Amounts Paid to Others on Your Behalf          $ _____ 3,294.20 _____ (4)

5 Amount Financed (3 + 4)                                                   $ _____ 17,744.26 _____ (5)

   ‡The delivery and handling charge represents costs and profit to the Seller/Creditor.

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked on page 5 of this contract.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

---

**Check the insurance you want and sign below:**

**Optional Credit Insurance**

☐ Credit Life:   ☐ Buyer   ☐ Co-Buyer   ☐ Both
☐ Credit Disability:   ☐ Buyer   ☐ Co-Buyer   ☐ Both

Premium:
   Credit Life $ _____ N/A _____
   Credit Disability $ _____ N/A _____
Insurance Company Name
   _____ N/A _____
Home Office Address
   _____ N/A _____

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**

☐ _____ N/A _____           _____ N/A _____
   Type of Insurance              Term
Premium $ _____ N/A _____
Insurance Company Name
   _____ N/A _____
Home Office Address
   _____ N/A _____

☐ _____ N/A _____           _____ N/A _____
   Type of Insurance              Term
Premium $ _____ N/A _____
Insurance Company Name
   _____ N/A _____
Home Office Address
   _____ N/A _____

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the optional credit insurance and the other insurance checked above.

x**B** **N/A** _____ N/A _____
Buyer Signature            Date

x**B** **N/A** _____ N/A _____
Co-Buyer Signature         Date

**THIS CONTRACT DOES NOT PROVIDE FOR AUTOMOBILE LIABILITY INSURANCE, AND SAID BUYER ALSO STATES THAT HE OR SHE HAS/~~DOES NOT HAVE~~** (strike words not applicable) **IN EFFECT AN AUTOMOBILE LIABILITY POLICY AS DEFINED IN SECTION 42-7-103(2), COLORADO REVISED STATUTES, ON THE MOTOR VEHICLE SOLD BY THIS CONTRACT.**

---

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before
_____ N/A _____ , Year _____ N/A _____ . SELLER'S INITIALS _____ N/A _____

---

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business or agricultural use.
If a payment is not received in full within _____ N/A _____ days after it is due, you will pay a late charge of $ _____ N/A _____ or _____ N/A _____ % of the part of the payment that is late, whichever is less.
If this box is not checked, the late charge in the "Federal Truth-In-Lending Disclosures" still applies.

Non-Authoritative Copy  Ally Bank - 02/25/2023

Non-Authoritative Copy  Ally Bank - 02/25/2023

*Exhibit A*

**OTHER IMPORTANT AGREEMENTS**

Non-Authoritative Copy  Ally Bank - 02/25/2023

Non-Authoritative Copy  Ally Bank - 02/25/2023

**1. FINANCE CHARGE AND PAYMENTS**

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose, as the law allows.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**e. Your right to refinance a balloon payment.** A balloon payment is a scheduled payment that is more than twice as large as the average of all your other regularly scheduled payments. If you are buying the vehicle primarily for personal, family, or household use, you meet our normal credit standards, and we are in the business of extending credit, you have the right to refinance the balloon payment when due without penalty at our prevailing rates. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

**2. YOUR OTHER PROMISES TO US**

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as an additional insured and as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe at once after we give you any notice the law requires. Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information during credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fees and court costs the law permits. The maximum attorney's fee you will pay will be 15% of the amount you owe, unless a court awards an additional amount. You will also pay any collection costs directed by the court.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you after we give you any notice the law requires. We may only take the vehicle if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

Exhibit A

**f.** ~~We will sell the vehicle in any event if you~~ not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g.** **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

## 5.

**Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

## 6. SERVICING AND COLLECTION CONTACTS

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

## 7. APPLICABLE LAW

Federal law and the law of the state of Colorado apply to this contract.

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

---

**Seller's Right to Cancel**

**a.** Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit, locate financing for you on the exact terms shown in this contract, and assign this contract to a financial institution. You agree that Seller has the number of days stated on page 1 of this contract to assign this contract. You agree that if Seller is unable to assign this contract within this time period to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel this contract.

**b.** If Seller elects to cancel per Paragraph a above, Seller will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new contract with different financing terms (for example, a larger down payment, a higher annual percentage rate, a required cosigner, etc.) or you may pay with alternate funds arranged by you.

**c.** Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give you back all consideration Seller has received in accordance with the terms of the Retail Purchase Agreement or Buyers Order.

**d.** If you do not immediately return the vehicle, Seller may use any legal means to take it back (including repossession) and you will be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

**e.** While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession.

**f.** The terms of this Seller's right to cancel survive Seller's cancellation of this contract.

Non-Authoritative Copy Ally Bank - 02/25/2023

Non-Authoritative Copy Ally Bank - 02/25/2023

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is $** _____N/A_____ and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

---

**Optional Guaranteed Automobile Protection (GAP) Agreement.** A GAP agreement is not required to obtain credit or any particular or favorable credit terms. Neither will be provided unless you sign and agree to pay the extra charge. You may wish to consult an insurance agent to determine whether similar coverage may be obtained and at what cost. Gap protection benefits may decrease over the term of this contract. You may cancel gap protection for any or no reason within 30 days after you purchased it and receive a full refund of the gap protection fee or premium as long as no loss or event covered by gap protection has occurred. Gap protection is not a substitute for collision or property damage insurance. If you choose to buy a GAP agreement, the charge is shown below and in Item 4D of the Itemization of Amount Financed.

Charge $ ___354.00___  Term: ___72___          JM&A GAP
                                              (Name of GAP Agreement)
I want the GAP agreement.

x C  *MICHAEL WHITFIELD*        02/23/2023   x C  *PAIGE NGUYEN*         02/23/2023
Buyer Signature                  Date         Co-Buyer Signature          Date

---

## NO COOLING OFF PERIOD

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

---

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs **x D** *MICHAEL WHITFIELD*  Co-Buyer Signs **x D** *PAIGE NGUYEN*
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
**See the rest of this contract for other important agreements.**

**NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs **x E** *MICHAEL WHITFIELD*  Date 02/23/2023  Co-Buyer Signs **x E** *PAIGE NGUYEN*  Date 02/23/2023
Buyer Printed Name ___MICHAEL WHITFIELD___  Co-Buyer Printed Name ___PAIGE NGUYEN___
If the "business" use box is checked in "Primary Use for Which Purchased": Print Name ___N/A___  Title ___N/A___

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here  **X** ___N/A___  Address ___N/A___
Seller signs ___ECHOPARK___  Date 02/23/2023  By **x E** *Felicia Ramos*  Title Document Spec

Non-Authoritative Copy  Ally Bank - 02/25/2023

**LAW** **FORM NO. 553-CO-e** (REV. 9/20)
©2020 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

*LAW 553-CO-e 02/11/21* Page 5 of 5

Exhibit A

### CERTIFICATION BY CUSTODIAN OF RECORDS
### Certified Print® Evidentiary Package
### for Electronic Original® Document

I, the individual signing below, hereby certify that:

I am an employee or agent of the Organization named below (the "Organization").The Organization utilizes the electronic document creation, authentication, storage, and management software provided by eOriginal, Inc. (the "Software"). I am authorized by the Organization to access and to print copies of original documents electronically created, authenticated, stored, and managed by or on behalf of the Organization through use of the Software (each such original an "Electronic Original® Document"). I use the Software on behalf of the Organization in accordance with the Organization's internal procedures and in the ordinary course of business of the Organization. I rely upon the operation of the Software, and the computer on which I access the Software, on a regular basis and in the ordinary course of business on behalf of the Organization. The Organization relies upon the operation of the Software and the accuracy of the Electronic Original Documents produced and maintained by the Software in the ordinary course of the Organization's business.

To create the copies of documents provided with this Certification (collectively, the "Copy"), I instructed the Software to initiate the Certified Print process and cause a copy of an Electronic Original Document to be printed to paper. The printed Copy is a true and correct rendering of that Electronic Original Document. At the time I used the Software to create the Copy, the Software and the computer on which I accessed the Software were properly functioning.

Attached to the Copy is a Document Activity History report produced by the Software which sets forth the history of the Electronic Original Document evidenced by the Copy from creation of such Electronic Original Document through the date and time I instructed the Software to execute the Certified Print® process to create the Copy. The Document Activity History report sets forth all actions taken in respect of, and all access and alterations to, the Electronic Original Document while it is maintained by the Software. As shown in the Document Activity History report, the Electronic Original Document evidenced by the Copy was created through use of the Software at or near the time of the occurrence of the matters set forth therein, by persons with knowledge of those matters or from information transmitted by such persons. The Electronic Original Document has been kept in the ordinary course of business of the Organization and it was the regular practice of the Organization to make and maintain the Electronic Original Document.

I insert my signature below to declare under the penalties of perjury that the foregoing is true and correct.

Organization:  Ally Bank

Electronic Original Vault Identifier:  Transaction: 1965012328-Document: 1965012331

Full Name:  Paul Tangen

Signature:  Paul Tangen   Digitally signed by Paul Tangen
Date: 2024.04.05 10:57:10 -05'00'

Date: _____



Exhibit A

DO NOT ACCEPT WITHOUT VERIFYING EAGLE WATERMARK IN PAPER

## STATE OF COLORADO
## CERTIFICATE OF TITLE
### MOTOR VEHICLE

**TITLE NUMBER** 009278678

**ODOMETER** 85718 A

**ODOMETER LEGEND:**
A - Actual Mileage
E - Exceeds mechanical limits
N - Not actual mileage: WARNING ODOMETER DISCREPANCY

| VIN | YEAR | MAKE | MODEL |
|---|---|---|---|
| ZACCJBCT9GPD30350 | 2016 | JEEP | RENEGADE |

**WEIGHT**
3573

**TITLE BRANDS**

ALLY BANK
PO BOX 8125
COCKEYSVILLE MD 21030-8125

**DATE PURCHASED**
23-Feb-2023

**DATE ACCEPTED**
24-Apr-2023

**DATE ISSUED**
24-Apr-2023

**ISSUED BY**
ADAMS

**OWNER** JTWROS
**PAIGE NGUYEN**
**MICHAEL WHITFIELD**

**PREVIOUS TITLE NUMBER**
008827253

**PREVIOUS TITLE STATE**
CO

Pursuant to C.R.S 42-6-109(3) a person transferring ownership of a vehicle may voluntarily notify the Department of Revenue, Division of Motor Vehicles within five days of transfer of ownership at mydmv.colorado.gov. If properly notified the person transferring ownership is not held liable in or subject to any civil or criminal action brought against the transferring owner or vehicle pursuant to C.R.S 42-6-109(3)(d).

**FIRST LIENHOLDER**
**ALLY BANK**
PO BOX 8125 COCKEYSVILLE MD 21030-8125

**RECEIVED**
12-Apr-2023

**EXTENSION**

**MATURITY**
12-Apr-2033

**LIEN AMOUNT**
26,295.12

Signature below certifies under penalty of perjury in the second degree the release of the first lienholder's interest in the vehicle

_____
Lienholder's Name

_____
Authorized Agent's Signature    Date

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED.
SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN

COLORADO DEPARTMENT OF REVENUE
**Mark Ferrandino**
**Executive Director**

KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

VOID IF ALTERED

Exhibit B

# N.A.D.A. Official Used Car Guide
# Vehicle Valuation

Print Date: April 05, 2024

Vehicle Description:  2016 Jeep Renegade Utility 4D Trailhawk 4WD 2.4L I4
VIN:                          ZACCJBCT9GPD30350

**Base Values**

Retail: $ 11975.00          Wholesale/Trade-in: $ 10450.00

**Optional Equipment/Adjustments**

Estimated Miles: 102500          $ 0.00

**Total Adjusted N.A.D.A. Used Car Guide Values**

Retail: $ 11975.00          Retail/Wholesale Average: $ 11212.50

Reference 04/2024 Mountain

Exhibit C

Payment History

| Date | Description | Payment due | Payment made | Balance |
|---|---|---|---|---|
| 2/23/2023 | Cash down Payment_F | 4000.00 | 0.00 | 4000.00 |
| 2/23/2023 | Receipt - paid via dealer | 0.00 | 4000.00 | .00 |
| 4/1/2023 | Receipt - direct pay online | 0.00 | 365.21 | -365.21 |
| 4/9/2023 | Repayment | 365.21 | 0.00 | .00 |
| 5/9/2023 | Repayment | 365.21 | 0.00 | 365.21 |
| 5/11/2023 | Receipt - AAOS one time pay | 0.00 | 365.21 | .00 |
| 6/9/2023 | Repayment | 365.21 | 0.00 | 365.21 |
| 6/9/2023 | Receipt - AAOS one time pay | 0.00 | 365.21 | .00 |
| 7/9/2023 | Repayment | 365.21 | 0.00 | 365.21 |
| 7/9/2023 | Receipt - AAOS one time pay | 0.00 | 365.21 | .00 |
| 8/9/2023 | Repayment | 365.21 | 0.00 | 365.21 |
| 8/12/2023 | Receipt - AAOS one time pay | 0.00 | 365.21 | .00 |
| 8/12/2023 | AAOS one time pay payment rejected | 0.00 | -365.21 | 365.21 |
| 8/23/2023 | Late Charge_Accrued | 15.00 | 0.00 | 380.21 |
| 9/3/2023 | Receipt - AAOS one time pay | 0.00 | 365.21 | 15.00 |
| 9/9/2023 | Repayment | 365.21 | 0.00 | 380.21 |
| 9/9/2023 | Receipt - CheckFreePay (debit card) | 0.00 | 366.00 | 14.21 |
| 10/9/2023 | Repayment | 365.21 | 0.00 | 379.42 |
| 10/20/2023 | Late Charge_Accrued | 15.00 | 0.00 | 394.42 |
| 10/26/2023 | Receipt - AAOS one time pay | 0.00 | 379.42 | 15.00 |
| 10/27/2023 | Receipt - AAOS one time pay | 0.00 | 379.42 | -364.42 |
| 11/9/2023 | Repayment | 365.21 | 0.00 | .79 |
| 12/9/2023 | Repayment | 365.21 | 0.00 | 366.00 |
| 12/20/2023 | Late Charge_Accrued | 15.00 | 0.00 | 381.00 |
| 12/22/2023 | Receipt - AAOS one time pay | 0.00 | 366.00 | 15.00 |
| 12/22/2023 | AAOS one time pay payment rejected | 0.00 | -366.00 | 381.00 |
| 1/9/2024 | Repayment | 365.21 | 0.00 | 746.21 |
| 2/9/2024 | Repayment | 365.21 | 0.00 | 1111.42 |
| 3/9/2024 | Repayment | 365.21 | 0.00 | 1476.63 |

Exhibit D

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

IN RE:  
**Michael Paul Whitfield**  
          **Debtor(s)**

**Case No. 23-15939-MER**

**Chapter 7**

## <u>AFFIDAVIT</u>

**STATE OF**   TEXAS       §  
                            §  
**COUNTY OF**   DALLAS      §

I am employed as a  _BANKRUPTCY ANALYST_  by AIS Portfolio Services, LLC, the bankruptcy servicer and custodian of records for Ally Bank ("Movant") and I am authorized to act as the Movant's representative. I declare under penalty of perjury that the following is true and correct based upon my personal review of certain business records maintained by Movant relating to the subject account. That I am informed and believe such business records were made at or near the time by, or from information transmitted by, a person with knowledge, kept in the ordinary course of Movant's regularly conducted business activity.

1.     On February 23, 2023 Debtor, Michael Paul Whitfield and Co-Debtor, Paige Nguyen entered into a Retail Installment Sales Contract with dealer for the purchase of the following collateral: 2016 Jeep Renegade Utility 4D Trailhawk 4WD 2.4L I4, VIN: ZACCJBCT9GPD30350 (hereinafter "Collateral"). Dealer thereafter assigned the Contract and title to Movant, which holds a security interest in the Collateral. True and correct copies of the Contract and title are attached hereto as Exhibits A and B.

2.     The fair market value of the Collateral is $11,975.00.

3.     As of April 05, 2024 the net payoff owing under the Contract is $17,437.80.

4.     The Contract calls for consecutive monthly payments of $365.21.

5.     The Contract is in default and currently due for the $1,476.63 payment. Contractually, the pre-petition defaults total $381.00 and the post-petition defaults $1,095.63. The total defaults (pre and post-petition) under the Contract, including any accrued late and/or unpaid charges, is $1,476.63.

Date: _4/8/24_

_[signature]_

Printed Name: PAUL TANGEN

Job Title: BANKRUPTCY ANALYST

AIS Portfolio Services, LLC, the bankruptcy servicer and custodian of records for Ally Bank

SUBSCRIBED AND SWORN TO BEFORE ME by _[signature]_ on this _8th_ day of _April_ ,2024.

CATHERINE SALAZAR
ID #131340164
My Commission Expires
November 03, 2025

My commission expires: _11/3/25_

Notary public

**AMENDED AND RESTATED PURCHASE STATEMENT OF WORK 2**
For 3rd Party Bankruptcy Account Servicing

**Attachment D – APPOINTMENT AS A CUSTODIAN OF BUSINESS RECORDS**

AMENDED AND RESTATED PURCHASE STATEMENT OF WORK 2

For 3rd Party Bankruptcy Account Servicing

## APPOINTMENT AS A CUSTODIAN OF BUSINESS RECORDS

Ally Financial Inc., ("Ally") and AIS Portfolio Services, LP, ("AIS") entered into a Master Service Agreement ("Agreement") whereby AIS performs bankruptcy servicing and administration services for Ally or its direct or indirect subsidiaries. In conjunction with the Agreement, Ally hereby appoints AIS as a custodian Ally's and its direct or indirect subsidiaries' business records for specific accounts in bankruptcy that are return to AIS for servicing. AIS accepts such appointment and agrees to perform the duties and responsibilities as custodi of the business records as set forth herein and in accordance with the Agreement.

The Agreement provides that Ally shall deliver/make available to AIS all information and supporti documentation necessary for the referred accounts to be serviced in bankruptcy, and AIS shall control the proce for maintenance and storage of the information and supporting documentation during the life of the representati in accordance with the Agreement. As the servicer of referred bankruptcy accounts for Ally and its direct or indire subsidiaries, AIS will utilize the information provided to complete any affidavit and/or declaration required authenticate the financial status of the referred account.

The scope of this appointment is limited to referred accounts that are in bankruptcy during the term representation for the specific account. Upon termination of AIS' representation on a referred bankruptcy accou in, addition to any other obligations under the Agreement, AIS will return all information and supporti documentation in its control to Ally and shall relinquish its obligations as a custodian.

Dated: 12 / 1 / 2020

BY: _Jenn a. Miller_

Name: Laura Miller

Title: Director, Supply Chain

State of NC

County of Mecklenburg

Subscribed and sworn to (or affirmed) before me on this 1st day of Dec. , 20 20 , by LAURA MILLER proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

# AMENDED AND RESTATED PURCHASE STATEMENT OF WORK 2

For 3rd Party Bankruptcy Account Servicing

Signature

## ACKNOWLEDGMENT

~~The undersigned follows, All authorized and duly agreed and warrants the release and payment of a custodian of records.~~

Dated: 9/28/20

BY:

Name: C6 ANDERS
Title: VICE PRESIDENT

State of: NEW JERSEY
County of: GLOUCESTER

Subscribed and sworn to (or affirmed) before me on this 28th
day of _____, 2020, by Christopher
_____

proved to me on the basis of satisfactory evidence to be the
person(s) who appeared before me.

JESSICA L LEONARDO
Notary Public - State of New Jersey
My Commission Expires Sep 29, 2024

Signature: Jessica Leonardo

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF COLORADO

### The Honorable Michael E. Romero

| | |
|---|---|
| In re: | |
| Michael Paul Whitfield | Case No. :23-15939-MER |
| Debtor(s) | |
| Ally Bank, | Chapter 7 |
| Movant | A Contested Matter |
| Michael Paul Whitfield | |
| Debtor(s) | |
| Jeanne Y. Jagow     Chapter 7 Trustee | |
| Respondent(s) | |

## AFFIDAVIT OF P. MATTHEW COX

P. MATTHEW COX, being first duly sworn and deposed, states as follows:

1.     I am the attorney for the movant Ally Bank which has filed a Motion for Relief from Stay in the above-referenced case, and I have personal knowledge of the facts stated herein.

2.     I hereby certify that Ally Bank or its agents conducted a diligent search of the Department of Defense Manpower Date Reporting System and reviewed the Debtor Declaration Pursuant to Service Member's Civil Relief Act of 2003. I further certify that Ally Bank or its agents did not find any records that the Debtor is currently in active service.

A copy of the Military Status Report from the Department of Defense Manpower Data Center is attached hereto.

FURTHER AFFIANT SAYETH NAUGHT.

DATED this April 11, 2024

_____
P. Matthew Cox

STATE OF UTAH                    )
                                 : ss.
COUNTY OF SALT LAKE )

On this April 11, 2024 before me personally appeared P. Matthew Cox, known to me to be the individual who executed the foregoing Affidavit and who acknowledged execution of the same.

Melanie Watson
State of Utah
Notary Public
Commission No. 734194
My Commission Expires 12/02/2027

_____
Notary Public
My Commission Expires:

Department of Defense Manpower Data Center

Results as of : Apr-05-2024 06:08:32 PM

SCRA 5.19



## Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN:                    XXX-XX-1487
Birth Date:
Last Name:          WHITFIELD
First Name:         MICHAEL
Middle Name:     PAUL
Status As Of:      Apr-05-2024
Certificate ID:     KCJMMSTGX7KNJXH

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

Department of Defense Manpower Data Center

Results as of : Apr-05-2024 06:10:10 PM

SCRA 5.19



### Status Report
### Pursuant to Servicemembers Civil Relief Act

SSN: XXX-XX-3877
Birth Date:
Last Name: NGUYEN
First Name: PAIGE
Middle Name:
Status As Of: Apr-05-2024
Certificate ID: 993QYWJVJW6347X

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individual's active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.